IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL E. SADOWSKY<br>　　　Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 03-0059<br>) |
| INGERSOLL-RAND COMPANY<br>　　　Defendant. | )<br>) |

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                                July 10, 2006

　　This is an age discrimination case. On February 23, 2005, a jury returned a verdict against defendant and awarded plaintiff $50,000 in compensatory damages. As a result of a prior ruling of the court, defendant was directed to reinstate plaintiff. Plaintiff currently works for defendant. Before the court are two post-trial motions: (1) plaintiff's motion to enforce judgment [doc. no. 77]; and (2) plaintiff's supplemental petition for attorneys' fees [doc. no. 78].

　　In his motion to enforce judgment, plaintiff asks the court to resolve a dispute that has arisen between the parties regarding the terms of his reinstatement. In short, plaintiff seeks an order prohibiting defendant from forcing him to repay the more than $40,000 in pension benefits he received after his wrongful discharge and directing that he be given uninterrupted seniority credit dating back to 1978. For the reasons that follow, that motion will be denied.

In his petition for attorneys' fees and costs, plaintiff asks that this court award him $36,810.74 for expenses incurred between March and December of 2005. We previously awarded plaintiff attorneys fees and costs in the amount of $232,495.34. For the following reasons, we will award plaintiff a portion of the fees and costs requested.

A.   Motion to Enforce Judgment

Plaintiff claims that he seeks to compel defendant's compliance with this court's reinstatement order. On March 4, 2005, this court ordered that plaintiff be reinstated in accordance with the terms and conditions described by defendant's human resources representative at the February 22, 2005 reinstatement hearing. Following entry of this order, the parties began the process of reinstatement. Several disputes arose between the parties. The remaining dispute concerns pension payments that plaintiff received after he was fired and seniority status.

Plaintiff worked for defendant from 1978 to January of 2002, when he was wrongfully discharged due to his age. He was reinstated, pursuant to this court's order, in May of 2005. He received pension payments totaling $43,328.24 between the time of his discharge and reinstatement. Plaintiff contends that he

need not reimburse defendant for those payments, but should also receive uninterrupted seniority credit starting in 1978. Plaintiff claims that this is what was promised to him at the reinstatement hearing. We disagree.

Plaintiff contends that the following colloquy from the reinstatement hearing between defense counsel and Mr. Kozar, defendant's human resources representative, proves that he is entitled to both keep the pension payments and receive uninterrupted seniority dating back to 1978:

> **Ms. Ryan**: Would he be credited for his previous employment with Ingersoll-Rand?
> **Mr. Kozar**: All the years he had put in the company would remain as part of his vesting credits, yes.
> **Ms. Ryan**: He would not be required to repay the pension benefits be received since termination?
> **Mr. Kozar**: No, he would not have to.

According to plaintiff, this exchange meant that he would be credited with seniority, dating back to 1978, without interruption, and would also be permitted to keep the more than $40,000 in pension payments received after his termination. This position is not supported by the above testimony.

Mr. Kozar never stated that plaintiff would be given uninterrupted seniority dating back to 1978. He stated that plaintiff would not loose his prior seniority, but would be given credit for "[a]ll the years he had put in the company." Thus, according to Mr. Kozar's testimony, if plaintiff were to return

3

to work for defendant, he would be given credit for the 24 years he had already "put in" with defendant, and would begin accruing seniority credits with his 25th year of service. Allowing plaintiff to have uninterrupted seniority dating back to 1978 was not an option contemplated at the reinstatement hearing. Mr. Kozar's testimony does not consider how, whether, or under what circumstances plaintiff would, or could, receive seniority credit for the January 2002 to May 2005 time period.

However, apparently during the course of the reinstatement process, the parties devised an option that would have allowed plaintiff to obtain uninterrupted seniority status. Defendant's position was that in order to receive this credit, plaintiff would have to pay back the pension benefits. Plaintiff contended that he should be allowed to keep the pension payments, and also receive seniority credit, an admitted double recovery. These were terms that the parties were free to negotiate because they were not addressed at the reinstatement hearing. For this same reason, plaintiff's motion to enforce judgment is denied.[1]

---

[1] And for the same reason, the parties should be forewarned that to the extent they continue to negotiate this issue, they do so as a private matter, and without the need for any further involvement by the court.

to work for defendant, he would be given credit for the 24 years he had already "put in" with defendant, and would begin accruing seniority credits with his 25th year of service. Allowing plaintiff to have uninterrupted seniority dating back to 1978 was not an option contemplated at the reinstatement hearing. Mr. Kozar's testimony does not consider how, whether, or under what circumstances plaintiff would, or could, receive seniority credit for the January 2002 to May 2005 time period.

However, apparently during the course of the reinstatement process, the parties devised an option that would have allowed plaintiff to obtain uninterrupted seniority status. Defendant's position was that in order to receive this credit, plaintiff would have to pay back the pension benefits. Plaintiff contended that he should be allowed to keep the pension payments, and also receive seniority credit, an admitted double recovery. These were terms that the parties were free to negotiate because they were not addressed at the reinstatement hearing. For this same reason, plaintiff's motion to enforce judgment is denied.[1]

---

[1] And for the same reason, the parties should be forewarned that to the extent they continue to negotiate this issue, they do so as a private matter, and without the need for any further involvement by the court.

4

B.    Supplemental Petition for Attorneys' Fees and Costs

Plaintiff has also filed a supplemental petition for attorneys' fees and costs, representing work performed between March and December of 2005. For the following reasons, plaintiff's request will be granted, with reductions made where appropriate.

1.    Fee Petition

Plaintiff's attorneys charged 63.1 hours to issues related to plaintiff's fee petition. With respect to hours spent, a court is directed to deduct hours from the calculation if they are excessive, redundant, or otherwise unnecessary. Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001), Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Defendant contends that we should reduce these hours substantially so that they correspond to the time defendant's counsel spent working on fee petition issues. This is not the standard by which a court determines the reasonableness of attorneys' fees. The fact that defendant spent less time opposing the fee petition than plaintiff spent preparing, supporting, and defending it is largely irrelevant.

Defendant has failed to otherwise demonstrate that the amount of time spent on this task was excessive, redundant, or

unnecessary. We will not reduce the fees incurred in connection with the fee petition issue. Therefore, we make an award of $14,650 in this category ([27.6 hrs. x $325 = $8,970] + [35.5 hrs. x $160 = $5,680]).

### 2. Reinstatement - Non-Pension Reimbursement Issue

Plaintiff's attorneys charged 56.6 hours to reinstatement issues between March and May of 2005. During this period, the parties were negotiating the exact terms of plaintiff's new position in Baltimore, and ultimately Pittsburgh. Defendant claims that these fees should be reduced by 80 percent because plaintiff ultimately chose to accept the position in Pittsburgh, after the parties negotiated extensively regarding the Baltimore position. Although we can understand defendant's frustration -- much time and effort would have been saved had plaintiff accepted the Pittsburgh position from the start -- that does not mean that the fees were excessive, redundant, or otherwise unnecessary.

As plaintiff correctly notes, had he not negotiated so aggressively, he might not have been able to acquire the more favorable Pittsburgh position, under the final terms offered to him. While it may be clear, in hindsight, that the Pittsburgh position was the best option all along, there is no indication that plaintiff abused the negotiation process in arriving at his

ultimate decision. Nevertheless, we do find that expending 56.6 hours over a two month period on these issues is excessive. The issues were not overly complex and could likely have been handled by a single attorney. We will reduce the fees in this category by 50 percent. Therefore, we make an award of $6,953.50 in this category ([29.4 hrs. x .50 x $325 = $4,777.50] + [27.2 hrs. x .50 x $160 = $2,176.00]).

### 3. Reinstatement - Pension Reimbursement Issue

Plaintiff's attorneys charged 26.7 hours to addressing the issues raised in plaintiff's motion to enforce judgment, i.e., uninterrupted seniority and repayment of pension benefits. Defendant claims that all of these hours should be disallowed because plaintiff's position was frivolous. As discussed above, we agree that plaintiff's argument was unsupported by the reinstatement hearing testimony. While plaintiff was free to negotiate these issues, he had little support for his position that the court's reinstatement order mandated the result he sought.

As such, we agree with defendant that fees incurred in relationship to this issue should be substantially reduced. We reduce the fees in this category by 75 percent. Therefore, we

7

make an award of $1,690.88 in this category ([15.1 hrs. x .25 x $325 = $1,226.88] + [11.6 hrs. x .25 x $160 = $464]).

### 4. Costs

Plaintiff has requested costs in the amount of $1,490.24 for the time period March to December of 2005. Although, as a general matter, defendant claims that the total fees and costs requested by plaintiff in his supplemental petition are unreasonable, defendant has not specifically objected to any of the costs submitted. Upon independent review, we find that the request for costs is reasonable, and we will not reduce it. Therefore, we will award $1,490.24 in costs.

Plaintiff will be awarded attorneys' fees in the amount of $23,294.38 and costs in the amount of $1,490.24, for a total award of $24,784.62. Given that we have addressed the remaining dispute regarding plaintiff's reinstatement, and have made an additional award of attorneys' fees, which now exceed a quarter of a million dollars, the court will not expect any further motions from the parties.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL E. SADOWSKY<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 03-0059<br>) |
| INGERSOLL-RAND COMPANY<br>Defendant. | )<br>)<br>) |

ORDER

AND NOW, this 10th day of July, 2006, IT IS HEREBY ORDERED that plaintiff's motion to enforce judgment [doc. no. 77] is DENIED;

IT IS FURTHER ORDERED that plaintiff's supplemental petition for attorneys fees [doc. no. 78] is GRANTED, with appropriate reductions as explained in this court's memorandum. Plaintiff is awarded attorneys' fees in the amount of $23,294.38 and costs in the amount of $1,490.24, for a total supplemental award of $24,784.62.

BY THE COURT:

_____, J.

cc:   All Counsel of Record

9